IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| JEFFREY L. SHURTLIFF,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A. AND FREDDIE MAC CORPORATION,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING OTHER MOTIONS AS MOOT<br><br>Case No. 1:10-CV-165 TS |

This matter is before the Court on a Motion to Dismiss filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Federal Home Loan Mortgage Corporation, served as Freddie Mac Corporation (collectively "Defendants"), as well as a number of other Motions filed by both Plaintiff and Defendants. For the reasons discussed below, the Court will grant Defendants' Motion to Dismiss and deny the remaining Motions as moot.

I. STATEMENT OF FACTS

The following facts are taken from Plaintiff's Complaint. On or about April 25, 2008, Plaintiff obtained a loan for a home located in Ogden, Utah, secured by a Deed of Trust under

1

which Defendant Wells Fargo is the named beneficiary.[1]  On October 28, 2009, Plaintiff notified Defendants of possible future default on loan payments.  At the time of this notification, Plaintiff was current with all of his payments.

Plaintiff had a conversation with a Wells Fargo representative concerning the Home Affordable Modification Program ("HAMP").[2]  Plaintiff was told that he qualified for the program and was provided documentation relating to HAMP.[3]  Plaintiff entered into a Trial Agreement under which he was required to make reduced payments of $1,068.40 for the months of December 2009 to February 2010.[4]

The Trial Agreement signed by Plaintiff contained the following language:

> D.  The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full.  If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;
> E.  When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of: the acceleration of the loan or foreclosure action and related activities and shall not constitute a

---

[1] Docket No. 8, Ex. A.

[2] On October 8, 2008, President Bush signed into law the Emergency Economic Stabilization Act of 2008 ("EESA").  Section 109 of the Act required the Secretary of the Treasury to take certain measures in order to encourage and facilitate loan modifications.  Part of the result was the Making Home Affordable Program, which includes HAMP.  HAMP seeks to assist three to four million homeowners who have defaulted on their mortgages or who are in imminent risk of default by reducing monthly payments to sustainable levels.  *Marks v. Bank of Am., N.A.*, 2010 WL 2572988, at *5 (D. Ariz. June 22, 2010).

[3] Plaintiff attached the various documents he received in relation to the HAMP program to the Complaint he filed in state court.  *See* Docket No. 13, Ex. 7.

[4] *Id*.

cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

 F. If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required . . . ; or (iii) the Lender determines that my representations . . . are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

 G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan. . . .[5]

The Trial Agreement further states:

That all terms and provision of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.[6]

Plaintiff made all of the required payments during the trial period. At the end of the trial period, Plaintiff alleges that he began to call Defendant Wells Fargo to inquire about when the modification would be complete. Plaintiff states that he was instructed to continue making the $1,068.40 payments. In his Complaint and his Objection to Defendants' Motion to Dismiss, Plaintiff details the conversations that he had with various Wells Fargo representatives.[7] In these

---

[5]*Id*.

[6]*Id*.

[7]*Id*. at 3-5; Docket No. 12 at 15.

3

conversations, Plaintiff alleges that he was directed to continue making the $1,068.40 payment, that the modification was still being considered, and that there would be no foreclosure. Additionally, Plaintiff alleges that he inquired about the delinquent amount (the difference between his regular payments and the reduced payments) and was told that any delinquent amount would be put on the back of the loan.

On June 3, 2010, Plaintiff was informed that he had been turned down for a loan modification and that the delinquent balance was now due. Plaintiff alleges that Defendant intentionally extended the modification approval process in an effort to inflate the delinquent balance, knowing that Plaintiff would be unable to pay, in order to foreclose upon the property.

Plaintiff filed his Complaint in state court on September 10, 2010. In his Complaint, Plaintiff alleges causes of action under HAMP, breach of contract, unjust enrichment, and fraud.[8] Defendants removed this action to this Court on September 30, 2010.[9] Plaintiff is proceeding pro se and has filed a number of Motions, including: Request for Summary Judgment, Motion for Expedited Hearing, and a Motion for Temporary Restraining Order. Defendants have filed a Motion to Dismiss and a Rule 56(f) Motion. As the Motion to Dismiss resolves this matter, the Court need only discuss that Motion.

---

[8]In various filings with the Court, Plaintiff has attempted to raise various claims, such as the Utah Consumer Sales Practices Act, false pretense, larceny by trick, and theft by deception. As these claims were not included in Plaintiff's Complaint, the Court will not discuss them.

[9]Docket No. 2.

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[10] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[11] All well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[12] But, the court "need not accept conclusory allegations without supporting factual averments."[13] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[14] The Supreme Court has explained that a plaintiff must "nudge[ ][his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss.[15] Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the

---

[10]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[11]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (dismissing complaint where Plaintiffs "have not nudged their claims across the line from conceivable to plausible").

[12]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[13]*Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[14]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[15]*Id.*

complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.[16]

The Supreme Court recently explained the standard set out in *Twombly* in *Ashcroft v. Iqbal*.[17] In *Iqbal*, the Court reiterated that while Fed.R.Civ.P. 8 does not require detailed factual allegations, it requires "more than unadorned, the-defendant-unlawfully harmed-me accusation[s]."[18] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[19] "Nor does a complaint suffice if it tenders 'naked assertion[s]" devoid of 'further factual enhancement.'"[20]

The Court in *Iqbal* stated:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

---

[16] *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[17] 556 U.S. ___, 129 S.Ct. 1937 (2009).

[18] *Id*. at 1949.

[19] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[20] *Id*. (quoting *Twombly*, 550 U.S. at 557).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[21]

## III. DISCUSSION

As stated, Plaintiff's Complaint alleges violations of HAMP, breach of contract, unjust enrichment, and fraud. Each of these claims will be discussed below.

A.     HAMP

Plaintiff appears to argue that he was entitled to a loan modification under HAMP. However, as Defendants correctly point out, there is no private right of action under HAMP.[22] In his Objection to Defendants' Motion to Dismiss, Plaintiff states that he "is not arguing that he is entitled to a loan modification," but "that he was defrauded throughout the transaction of the HAMP Loan product."[23] The Court will discuss Plaintiff's fraud-related claims below. As there is no private right of action under HAMP, any claims that Plaintiff may bring under that program must be dismissed.

B.     BREACH OF CONTRACT

Plaintiff next alleges that Defendants breached the verbal contract they made with Plaintiff. This claim is essentially a claim for a HAMP modification, which must fail for the

---

[21]*Id.* at 1949-50 ( internal quotation marks and citations omitted).

[22]*See Marks*, 2010 WL 2572988, at *5-6.

[23]Docket No. 12 at 8.

same reason set forth above.[24]  Further, the Trial Agreement makes clear that the modification is subject to qualification and that the modification would not be made permanent until, among other things, Plaintiff received a fully executed copy of the Modification Agreement.[25]  Therefore, Plaintiff's breach of contract claim fails.

C.    UNJUST ENRICHMENT

Plaintiff also brings a claim for unjust enrichment.  However, "[r]ecovery under [unjust enrichment] presupposes that no enforceable written or oral contract exists."[26]  A "prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue."[27]  As there is an enforceable contract governing the rights and obligations of the parties here, Plaintiff cannot proceed under a claim for unjust enrichment.

D.    FRAUD

The elements for a claim of fraud include:

(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representer either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge on which to base such representation; (5) for the purpose or inducing the other party to act upon it; (6)

---

[24] *Marks*, 2010 WL 2572988, at *5 ("Plaintiff's allegations regarding breach of contract are simply an attempt at enforcing a private right of action under HAMP.").

[25] Docket No. 13, Ex. 7.

[26] *Davies v. Olson*, 746 P.2d 264, 268 (Utah Ct. App. 1987).

[27] *Ashby v. Ashby*, 227 P.3d 246, 250 (Utah 2010).

8

that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.[28]

Plaintiff's claim must also meet the requirements of Fed.R.Civ.P. Rule 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Simply stated, a complaint must 'set for the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"[29] "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."[30]

Defendants argue that Plaintiff cannot meet the showing of reasonable reliance because his fraud claims are in direct contradiction to the Trial Agreement that he signed. The Court agrees. The key provisions of the Trial Agreement are set forth above. As stated, the Trial Agreement makes clear that it is not a loan modification and that any modification would be contingent upon further approval. Further, the Trial Agreement makes clear how the payments received during the trial period will be used and that the lender retains its right to accelerate the loan and institute foreclosure proceedings. After it determined that Plaintiff did not qualify for a loan modification, Defendant Wells Fargo did exactly what it was permitted to do under the Trial Agreement and the original loan documents. Therefore, Plaintiff's fraud claim must fail.

---

[28] *Secor v. Knight*, 716 P.2d 790, 794 (Utah 1986) (citations omitted).

[29] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

[30] *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quotation marks and citation omitted).

IV.  MOTION TO AMEND

Plaintiff seeks leave to amend if his Complaint is found to be deficient.  "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[31]  For substantially the same reasons set forth above, the Court finds that it would be futile to allow Plaintiff an opportunity to amend.  Therefore, Plaintiff's request for leave to amend will be denied.

V.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 7) is GRANTED.  It is further

ORDERED that the remaining motions (Docket Nos. 4, 5, 9, and 21) are DENIED AS MOOT.

The Clerk of the Court is directed to close this case forthwith.

DATED   November 5, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[31] *Perkins v. Kan. Dept. of Corrections*, 165 F.3d 803, 806 (10th Cir. 1999).